UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. No. 5:19-cr-00108-GFVT-MAS |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| TIMOTHY WAYNE WELLMAN, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

Following a week-long jury trial, Defendant Timothy Wayne Wellman was found guilty of all eleven counts brought against him. [*See* R. 72.] Now, Mr. Wellman has filed a motion for acquittal and a motion for a new trial. [R. 88; R. 89.] For the reasons that follow, the Court **DENIES** both motions.

**I**

Mr. Wellman was initially charged in June 2019 with eight separate violations of federal law. [R. 1.] In January 2020, by way of a Superseding Indictment, Mr. Wellman was charged with three additional counts. [R. 40.] At base, the charges allege Mr. Wellman conspired to make illegal contributions to members of the Lexington, Kentucky City Council and then, when faced with a federal grand jury investigation, engaged in conduct to conceal, and prompted others to conceal, these illegal contributions. [*Id.*; R. 35 at 1–2.] Under Count 1, Mr. Wellman was charged with corruptly obstructing and impeding, and attempting to obstruct and impede, an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). [R. 40 at 3–5.] Under Counts 2 through 8, Mr. Wellman was charged with seven counts of knowingly aiding and abetting and procuring others to make false statements to FBI agents, in violation of 18 U.S.C. § 1001(a). *Id.* at 5–10. And, in Counts 9 through 11, Mr. Wellman was charged with one count of knowingly

aiding and abetting and procuring others to falsify documents and two counts of knowingly falsifying documents, in violation of 18 U.S.C. § 1519. *Id.* at 10–13.

At trial, the Government called a total of thirteen witnesses to testify in support of its case on the various charges. [R. 81; R. 82; R. 83; R. 84; R. 85.] In addition, the Government introduced, among other things, a number of checks, associated bank records, lease agreements, and recordings of prior witness interviews as exhibits in support of its case. *See id.* Following presentation of the evidence, the jury found Mr. Wellman guilty on all eleven counts. [R. 72.]

During the course of trial, Mr. Wellman moved for mistrial on three separate occasions. Each motion was denied. [*See* R. 69; R. 75; R. 76.] Now, Mr. Wellman has filed a post-trial motion for a judgment of acquittal pursuant to Federal Rule of Civil Procedure 29 and a motion for new trial pursuant to Rule 33. In support, Mr. Wellman restates many of the same arguments advanced in support of his previous motions for mistrial, in addition to arguing for relief on new grounds. After considering the arguments by Mr. Wellman, the supplemental authority filed in the record, and the evidence presented at trial, the Court upholds the jury's verdict and denies the requests for post-trial relief.

## II

### A

At the conclusion of the Government's case Mr. Wellman moved for acquittal pursuant to Federal Rule of Criminal Procedure 29, which the Court reserved ruling on to allow for post-verdict briefing.[1] [R. 66; R. 67.] Mr. Wellman has now filed additional briefing in support of a

---

[1] Each of the arguments made in support of that original motion are also made, in addition to some others, in Mr. Wellman's post-trial briefing. [*Compare* R. 66-1, *with* R. 89-1.] When citing the various defense arguments, the Court will only reference the post-trial briefing.

Renewed Motion for Acquittal and the Government has responded in opposition. [R. 89-1; R. 90-1; R. 93; R. 95.]

Rule 29 requires this Court to enter a judgment of acquittal on "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When considering a Rule 29 motion based on an alleged insufficiency of the evidence, the Court may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute its judgment for that of the jury. *See United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015). Instead, the Court views all the evidence in the light most favorable to the Government, and then considers whether any rational trier of fact could find the elements of the counts of conviction beyond a reasonable doubt. *See, e.g.*, *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016). "In sum, a defendant claiming insufficiency of the evidence bears a very heavy burden." *Callahan*, 801 F.3d at 616 (quoting *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007)). Mr. Wellman fails to sustain this burden and his Rule 29 motion is properly denied.

**1**

Mr. Wellman first argues the convictions on Count 1 and Counts 9 through 11 "were in error because the government failed to show that Mr. Wellman's actions impeded the investigation of a federal crime." [R. 89-1 at 2–3.] As set forth above, under Count 1, Mr. Wellman was charged with corruptly obstructing and impeding, and attempting to obstruct and impede, an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). [R. 40 at 3–5.] To obtain a conviction on this count, the Government had to prove (1) that the Defendant attempted to obstruct, influence, or impede any official proceeding[2] and (2) that he acted corruptly. [R. 74 at 14.] To prove that Mr. Wellman acted corruptly, the Government needed to show he acted "with

---

[2] The relevant official proceeding on this count was the federal grand jury investigation. [R. 74 at 14.]

the purpose of wrongfully impeding the due administration of justice." *Id.* Under Counts 9 through 11, Mr. Wellman was charged with one count of knowingly aiding and abetting and procuring others to falsify documents and two counts of knowingly falsifying documents, in violation of 18 U.S.C. § 1519. [R. 40 at 10–13.] To obtain a conviction on these counts the Government had to show, in relevant part, that Mr. Wellman or one of his agents (1) knowingly falsified a document, (2) with the intent to impede, obstruct or influence an FBI investigation, and (3) that the matter was within the FBI's jurisdiction. [*See* R. 74 at 19.]

Mr. Wellman's argument on these counts is that the proof at trial shows the FBI and grand jury investigations into his conduct were not sufficiently tied to the underlying bribery investigation. [R. 89-1 at 4–6.] In other words, he argues investigators became focused solely on how the obstruction occurred—the straw contribution scheme—and lost sight of what the obstruction was intended to conceal—the bribery. So, the argument continues, the Government failed to show that Mr. Wellman's conduct impeded any legitimate federal investigation into the federal bribery charges, as required to carry its burden of proof. *Id.* The Government disagrees, deeming this line of argument both "legally and factually flawed." [R. 93 at 1–2.]

Mr. Wellman made similar arguments in support of his pre-trial motion to dismiss indictment. [*See, e.g.*, R. 18-1 at 12 ("All of the investigator's questions related to alleged 'straw contributions,' not bribery.").] And he acknowledges that those arguments were rejected in this Court's ruling on that motion. [R. 89-1 at 5 (citing R. 35 at 4).] There, the Court found that, based on the allegations in the indictment, Mr. Wellman's alleged obstructive conduct was sufficiently related to the underlying federal bribery investigation such that the conduct may have impeded that investigation. [R. 35 at 4–5.] A similar holding is warranted here. Contrary

to Mr. Wellman's assertion, the Government introduced sufficient evidence tying the obstructive conduct to the underlying federal investigations.

When addressing this argument previously, the Court explained that obstruction charges often arise in the context of an investigation into separate federal charges: "As a matter of logic, charges under §§ 1512(c) and 1001(a) naturally arise where an investigation or official proceeding is underway regarding other matters, such as an investigation into bribery." *Id.* at 5 (citing *United States v. Aguilar*, 242 F. App'x 239, 241 (5th Cir. 2007)). The evidence introduced by the Government at trial, specifically FBI witness Chris Darmand's testimony, supports the conclusion that this is what happened here—i.e., that the investigation into Mr. Wellman's obstructive conduct naturally arose in the context of the bribery investigation.

Mr. Darmand explained that in his role he must "follow the money" to determine the source of funds donated to government officials which often informs whether bribery has occurred. [R. 81 at 87.] When questioned on direct about the nature of the investigation into Mr. Wellman, Mr. Darmand further explained: "[W]e had gone through this pattern of trying to investigate the bribery, and we had run into some challenges, which appeared to be obstructive behavior impeding our investigation, so a separate matter was opened up and -- by the U.S. Attorney's office to address the obstruction of justice." [R. 81 at 87.] So, again, "the investigation looked into the 'straw contribution' scheme because, if substantiated, 'the state election straw contribution scheme [was] the mechanism by which the Defendant attempted to conceal or disguise the bribery of the Council members.'" [R. 35 at 4–5 (citing R. 20 at 2).]

The Government introduced additional evidence that supported the FBI's suspicion that such a straw contribution scheme did exist. For example, while questioning Mr. Darmand, the Government introduced Exhibit No. 1A, a spreadsheet with a summary of the allegedly improper

contributions made by individuals who were later reimbursed by Mr. Wellman. [R. 81 at 88–89, 124.] Clearly, this summary could readily inform the bribery investigation and the obstruction investigation. Bribery would of course appear less likely if each contribution was made by an individual who decided to donate on their own accord. On the other hand, suspicion arises where investigation reveals that all the seemingly individual contributions were orchestrated by one individual who then reimbursed each contributor. In light of this reality, a sophisticated party will foresee potential investigation and structure the donations to avoid the appearance of wrongdoing. Such actions have the natural and probable effect of impeding a subsequent bribery investigation. *United States v. Kernell*, 667 F.3d 746, 753 (6th Cir. 2012).

Lastly, there is nothing in the record to indicate that the § 666 investigation was mere pretext in order that the Government may ultimately charge under different statutes. [R. 35 at 5.] In fact, the Government notes that the council members alleged to have received the bribes were interviewed after the opening of the obstruction investigation. [R. 93 at 4.] Mr. Wellman relies on this fact as support for his argument, but this reliance is misplaced. [R. 89-1 at 6.] Investigations occur in stages. The timeline here indicates that after investigating Mr. Wellman and concluding that he orchestrated the donations to city council members, federal investigators then sought to question these city council members about the donations. This logical progression of the bribery investigation cuts directly against Mr. Wellman's argument.

In sum, the evidence supports the jury's conclusion that Mr. Wellman acted to impede both the grand jury and FBI investigations, each of which were sufficiently tied to the bribery investigation. For the Court to displace this finding would be improper. *See Callahan*, 801 F.3d at 616. Mr. Wellman has not met the heavy burden of demonstrating insufficient evidence, and therefore, his Rule 29 motion is denied as to Count 1 and Counts 9 through 11. *Id.*

6

**2**

Second, Mr. Wellman argues he is entitled to a judgment of acquittal on Counts 2 through 8.  Under Counts 2 through 8, Mr. Wellman was charged with seven counts of knowingly aiding and abetting and procuring others to make false statements to FBI agents, in violation of 18 U.S.C. § 1001(a).  [R. 40 at 5–10.]  To obtain a conviction on these charges, the Government had to prove six elements: (1) that the person made the statement; (2) that the statement was false, fictitious, and fraudulent; (3) that the statement was material; (4) that the statement pertained to a matter within the jurisdiction of the executive branch of the United States federal government; (5) that the Defendant aided, abetted, induced or caused the person to make the false material statement; and (6) that the Defendant acted knowingly and willfully.  [R. 74 at 17.]

On these charges, Mr. Wellman argues that the Government did not prove the materiality of the various false statements.[3]  [R. 89-1 at 7.]  More specifically, he argues that each of the Government witnesses readily admitted that Mr. Wellman was the source of the funds and only lied as it related to why he provided the funds.  [R. 89-1 at 8–10.]  Mr. Wellman believes this shows materiality is lacking because the nature of the arrangement "between Mr. Wellman and any given witness was not, by the government's admission, material to its bribery investigation." *Id.*  Mr. Wellman offers no authority in support of this position.  And, in short, adopting this creative argument would require the Court to turn a blind eye to reality.

A material statement "is one that has the natural tendency to influence or is capable of influencing a decision of the Federal Bureau of Investigation."  [R. 74 at 17.]  As explained

---

[3] Relatedly, Mr. Wellman argues that because "the purportedly false statements related to the *nature* of the arrangement," they at most amounted to violations of state law, not federal law.  [R. 89-1 at 10 (emphasis in original).]  Accordingly, he argues the jurisdictional element of § 1001 is not met.  *Id.* Because the premise underlying this argument—that the source of the funds was not lied about—is rejected, the Court need not consider the argument further.

above, logically, it is less likely bribery has occurred where separate political donations are made by individuals who decided to donate on their own accord.  And, bribery becomes a more legitimate concern where a group of seemingly individual contributions were orchestrated by one individual who then reimbursed each contributor.  [*See* R. 93 at 8 ("If there was a straw contribution scheme, then the likelihood of it being the quid for the quo of a vote on the city hall construction plan rises astronomically.").]

This established, the materiality of the nature of the arrangement between Mr. Wellman and the others is evident.  In the latter instance—where the donations are orchestrated by one individual—the true source of the funds is the individual who reimburses those who donate.  Conversely, if an individual donates her own money and then is paid for a service performed unrelated to the donation then, of course, the individual donor is the source of the funds.  To argue that one is no different from the other is untenable.  An attempt to pass off reimbursements as legitimate, unrelated payments is material to an investigation into bribery.  *See United States v. Guishard*, 163 F. App'x 114, 119 (3d Cir. 2006).  Consequently, the false statements made by witnesses in furtherance of this concealment were material to the investigation.

**3**

Next, Mr. Wellman argues the Government failed to present evidence that Jeff Collins (Count 2), Tom Nash (Count 6), or Tom Lemaster (Count 8), lied to the FBI regarding the source of the funds they donated.  [R. 89-1 at 10.]  At this juncture, it is worth restating the lens through which the Court weighs a motion for judgment of acquittal.  The Court is to view all evidence in the light most favorable to the Government, and then consider whether any rational trier of fact could find the elements of the counts of conviction beyond a reasonable doubt.  In doing so, the Court may not reweigh the evidence or reevaluate the credibility of witnesses.  *See Callahan*,

801 F.3d at 616; *see also Burks v. United States*, 437 U.S. 1, 16 (1978) ("Even the trial court, which has heard the testimony of witnesses first hand, is not to weigh the evidence or assess the credibility of witnesses when it judges the merits of a motion for acquittal.").  This established, it is clear Mr. Wellman's most recent argument must also be rejected.

To carry its burden on these three charges, the Government introduced evidence including bank records and copies of checks, in addition to calling the three alleged agents as witnesses.  [*See, e.g.*, R. 83 at 170–71; R. 83 at 53–54.]  When called, Mr. Collins, Mr. Nash, and Mr. Lemaster each offered testimony that in some way denied that Mr. Wellman induced them into making false statements regarding reimbursement for the donations—a necessary element of a § 1001(a) charge.  [*See* R. 74 at 17.]  Even so, after hearing the testimony of all the witnesses as to Mr. Wellman's conduct—these three men included—and viewing the exhibits introduced by the Government, the jury found Mr. Wellman was guilty on all counts.

"[I]t is entirely within the province of the jury to weigh witness testimony and assess credibility based on the evidence presented . . . ."  *Onuoha v. Cont'l Airlines, Inc.*, 97 F. App'x 1, 3 (6th Cir. 2003).  Simply because these men denied engaging in a straw contribution scheme does not mean the jury could not conclude otherwise where the Government introduced a significant amount of evidence in support of its case.  *See United States v. Hernandez*, 569 F.3d 893, 896 (8th Cir. 2009).  The Court, mindful of the proper standard and the proper role of the jury, rejects Mr. Wellman's argument as to the sufficiency of the evidence on these three counts.

**4**

The Court now turns to Mr. Wellman's final argument in support of this motion.  Mr. Wellman argues that the reasons expressed by the United States in support of its motion to dismiss in a separate case in a separate district, *United States v. Flynn*, No. 1:17-cr-00232- EGS (D.D.C.) (R. 198 May 7, 2020), constitute binding statements of law that impact this case.  More

specifically, he argues (1) Government counsel in the present case has taken an opposite position

from that taken on the same issue in the *Flynn* case, and (2) that the doctrine of judicial estoppel

forbids it from doing so.  [R. 90-1 at 3 (citing *Teledyne Industries, Inc. v. N.L.R.B.*, 911 F.2d

1214, 1217–18 (6th Cir. 1990).]  In addition to overstating the binding effect of the arguments

set forth in the *Flynn* motion to dismiss, Mr. Wellman also overstates the factual and legal

similarities between the two cases.

First, as acknowledged by Mr. Wellman, "[t]he doctrine of judicial estoppel forbids a

party from taking a position inconsistent with one successfully and unequivocally asserted by the

same party in a prior proceeding." *Id.* (quoting *Teledyne Industries*, 911 F.2d at 1217–18)

(cleaned up).  Stated otherwise, "[i]n order to invoke judicial estoppel, a party must show that the

opponent took a contrary position under oath in a prior proceeding and that the prior position was

accepted by the court." *Teledyne Indus.*, 911 F.2d at 1218.  Here, it appears the motion to

dismiss remains unresolved such that "success" has not yet been achieved in *Flynn*.  *See*

*In re: Michael T. Flynn*, No. 20-5143, 2020 WL 3895735, at *1 (D.C. Cir. July 10, 2020); *see*

*also* Teledyne Indus., 911 F.2d at 1219 ("[B]efore the doctrine of judicial estoppel may be

invoked, the prior argument must have been accepted by the court.").  And, from a temporal

standpoint, the Government position advanced in the present case led to a jury verdict that

preceded the filing of the *Flynn* motion to dismiss.

The legal and factual issues before the *Flynn* court and this Court are also clearly

distinguishable.  For example, Mr. Wellman notes that in *Flynn* the FBI believed Mr. Flynn may

have violated the Logan Act, a statute the Department of Justice had never charged a violation of

in its 150-year history.  [R. 90-1 at 2.]  This, he argues, is similar to this case, where "the FBI

came to believe that Mr. Wellman had violated state campaign finance laws, for which there was

10

no federal jurisdiction." *Id.* Separately, the Court has already rejected this premise, finding that the straw contribution scheme was undertaken in part to conceal bribery and, as such, that federal investigation into the conduct had a proper federal jurisdictional basis. This requires no further analysis. And, on review, the remainder of the supposed factual and legal similarities set forth by Mr. Wellman similarly amount to attempts to reframe arguments already rejected by this Court. *See id.* ("In both cases, the Primary Violations were never charged.").

In sum, the arguments made in the Government's motion to dismiss in the *Flynn* case cannot be the basis for the implementation of the doctrine of judicial estoppel due to the unresolved nature of that case and its temporal relation to this case. Even if this were not so, Mr. Wellman overstates the similarities between the two cases. Quite simply, the positions taken by the Government in the respective cases do not implicate the policy underlying the judicial estoppel doctrine: "preserv[ing] the integrity of the courts by preventing a party form abusing the judicial process through cynical gamesmanship . . . ." *Teledyne Indus.*, 911 F.2d at 1217–18.

On the whole, Mr. Wellman fails to meet the heavy burden of demonstrating insufficient evidence. Based on the evidence introduced by the Government, the Court concludes a rational trier of fact could have found the Government established the essential elements of each crime charged beyond a reasonable doubt. *Vichitvongsa*, 819 F.3d at 270. Therefore, the Rule 29 motion is denied. *Callahan*, 801 F.3d at 616 (quoting *Jackson*, 473 F.3d at 669).

## B

Mr. Wellman alternatively requests a new trial pursuant to Federal Rule of Criminal Procedure 33. [R. 88.] Rule 33 allows the Court to vacate a judgment entered against a defendant and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 motions are ordinarily granted "only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *See United States v. Hughes*, 505 F.3d 578,

593 (6th Cir. 2007) (citation omitted).  While the Court construes all evidence in the light most favorable to the Government when analyzing a Rule 29 motion, the Court is allowed to "act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence" when resolving a Rule 33 motion.  *Id.*; *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998).

Rule 33 allows the Court to vacate a jury's verdict and grant a new trial "if the interest of justice so requires," but that phrase is not clearly defined in the Federal Rules of Criminal Procedure or elsewhere in the law.  *See United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).  Nevertheless, the Sixth Circuit has articulated "several recurring themes" that emerge from the body of Rule 33 case law that help guide the Court in reaching its conclusion.  Rule 33 may be used to grant a new trial if the jury's verdict is against the manifest weight of the evidence, or if a substantial legal error has occurred.  *Id.*  "[L]ess clear is whether a district court may grant Rule 33 relief where the verdict is not against the substantial weight of the evidence, and where no reversible error or violation of the defendant's substantial rights has occurred, but where the district court nonetheless believes that 'the interest of justice' requires a new trial."  *Id.* at 374.  Here, the Court finds no substantial legal error occurred and that a new trial is not required in the interest of justice.

**1**

Mr. Wellman argues the Government committed two substantial errors during trial that warrant a new trial.  [R. 88-1 at 6.]  First, he argues the Government threatened one of its own witnesses, Liz Stormbringer, into changing her story at trial to fit the prosecution theory of the case.  *Id.*  The Court already considered and rejected the same argument when made in support of Mr. Wellman's second motion for mistrial.  [R. 75.]  Before proceeding further, the Court will

restate the events giving rise to the alleged error, as set forth in its previous Memorandum

Opinion denying Mr. Wellman's motion for mistrial on this issue:

> On the third day of trial, the Government called Elizabeth Spruengli Stormbringer as a witness.  During direct examination, defense counsel asked to approach the bench when the Government questioned Ms. Stormbringer about a conversation with her attorney at the grand jury hearing.  The Court also asked Ms. Stormbringer's attorney, Jarrod Beck, who was present in the courtroom, to approach at this time.  During the course of this conversation, the Government informed the Court and Mr. Beck that, based on Ms. Stormbringer's trial testimony to that point and prior grand jury testimony, she was at risk of committing perjury.  Mr. Beck then requested that the Court give him an opportunity to speak with Ms. Stormbringer before proceeding any further.  Defense counsel objected to allowing the witness this opportunity, contending that it amounted to coercion which would result in Ms. Stormbringer conforming her testimony to the Government's theory of the case.  The Court overruled this objection and allowed Ms. Stormbringer an opportunity to speak with her attorney before continuing with her testimony.  Defense counsel then made an oral motion for mistrial, which the Court took under advisement.
> Upon returning from consultation with her attorney, Ms. Stormbringer informed the Government that she wanted to "correct" her earlier testimony.  In further discussion at the bench, defense counsel continued to press for a mistrial, contending that the events that took place as to Ms. Stormbringer amounted to improper coercion.  In light of this contention, in the presence of counsel for both sides, the Court asked Ms. Stormbringer's attorney to approach to discuss his interaction with Ms. Stormbringer over the break.  Her attorney assured the Court that he was the only one who had spoken with Ms. Stormbringer about the possible perjury issue and that she had no interaction with the Government during the break in testimony.  The Court then permitted Ms. Stormbringer to proceed with her testimony.  At that time, the Court continued to reserve a ruling on the motion for mistrial and allowed the parties an opportunity to brief the issue.

[R. 75 at 1–2.]  As noted, the Court ultimately denied the motion for mistrial.  *Id.* at 5.

Mr. Wellman acknowledges that the Court has already rejected this argument but asks for

reexamination of the issue under the Rule 33 standard.  [R. 88-1 at 5 n. 1.]  Indeed, the Rule 33

"substantial error" standard appears more relaxed than the "seriously prejudicial error" standard

applicable to a motion for mistrial.  *Compare Munoz*, 605 F.3d at 373, *with United States v.*

*Moore*, 917 F.2d 215, 220 (6th Cir. 1990) (citation omitted).  The standard may afford the Court

more discretion but, at a base level, some type of perceptible error is still required for relief to be

13

provided.  *See Munoz*, 605 F.3d at 373 (cleaned up) ("Rule 33 relief is available where the substantial rights of the defendant have been jeopardized by errors or omissions during trial."). The Court will analyze the issue accordingly.

In the present context, the Sixth Circuit has made clear that a criminal defendant's right to due process "precludes prosecutors and judges from improperly threatening witnesses with a perjury prosecution." *United States v. Stuart*, 507 F.3d 391, 398 (6th Cir. 2007) (citing *Webb v. Texas,* 409 U.S. 95, 97–98 (1972)).  To establish that a prosecutor "improperly threatened" a witness, a defendant must present "government conduct which amounts to substantial interference with a witness' free and unhampered determination to testify." *United States v. Foster,* 128 F.3d 949, 953 (6th Cir. 1997) (citation omitted); *see also Juan v. United States*, 704 F.3d 1137 (9th Cir. 2013).  Merely warning a witness of the consequences of perjury, without more, does not implicate or impinge upon this right. *United States v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995).

Mr. Wellman argues that the Government's statements to the Court and Ms. Stormbringer's counsel amounted to threats towards Ms. Stormbringer, which led to her altering her testimony accordingly.  [R. 88-1 at 7–8.]  In support of this argument he cites to *Pierce*, where the Sixth Circuit acknowledged that where the prosecutor communicates a threat to a witness "over and above what the record indicates is necessary, and appropriate, the inference that the prosecutor sought to coerce a witness into silence is strong." *Id.* (citing *Pierce*, 62 F.3d at 832 (citation omitted)).  In response, the Government argues that its conduct did not rise to the level of "bullying and threatening" and, instead, the actions taken were well within the bounds of acceptable prosecutorial behavior.  [R. 92 at 1–2.]

14

As before, the Court perceives no error.  In this case it was Ms. Stormbringer's independent counsel, Mr. Beck, who requested a break in order to speak with his client to inform her of the potential perjury charge.  *Id.* at 2.  As the Court noted when previously considering this issue, "[t]he potential for unconstitutional coercion by a *government actor* significantly diminishes [where a] witness elects not to testify after consulting an independent attorney."  *United States v. Serrano*, 406 F.3d 1208, 1216 (10th Cir. 2005) (citation omitted) (emphasis in original).  On these facts, any "pressure" applied by the Government was indirect at most.  This sort of conduct pales in comparison to instances in which courts found witness intimidation or coercion constituted reversible error.

For example, in *Webb*, the Supreme Court found reversible error where "[t]he trial judge gratuitously singled out this one witness for a lengthy admonition on the dangers of perjury." 409 U.S. at 97–98.  The court explained that "in light of the great disparity between the posture of the presiding judge and that of a witness in these circumstances, the unnecessarily strong terms used by the judge could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify."  *Id.*  Here, no such admonition, either from the Government or the Court occurred.  Instead, again, it was Mr. Beck who requested the break and it was Mr. Beck alone who communicated with Ms. Stormbringer. [R. 88-1 at 2–3.]  On the record, Government counsel only mentioned the word perjury once in open court when noting the reason for the break in testimony—and not in the form of a threat or admonition.  [R. 83 at 56.]  This cuts directly against any argument that any perjury warning rose to the level of a threat.  *See Serrano*, 406 F.3d at 1216 ("Interference is substantial when the government actor actively discourages a witness from testifying through threats of prosecution, intimidation, or coercive badgering.").  Moreover, to avoid the potential that the perjury

discussion would be viewed as a threat, the Government told Mr. Beck that "our office will have a perjury charge discussion, regardless of what she does now.  So we're not asking her to conform so that she doesn't get charged. We will have that discussion anyway." *Id.*  This disclosure casts doubt on Mr. Wellman's theory that the "threat of perjury was not about protecting Ms. Stormbringer . . . it was about using the threat of perjury to pause her testimony, using her counsel to convey the threat, and effectively guarantee she change the her [sic] testimony to align with the government's theory of the case."  [R. 88-1 at 7.]

To adopt Mr. Wellman's theory and find that an improper threat occurred, the Court would have to (1) ignore that it was Ms. Stormbringer's counsel who requested the break after being made aware of the perjury concern; (2) ignore that her counsel was the only one to advise Ms. Stormbringer regarding the possibility of perjury; and (3) conclude that the Government was less than truthful when assuring all relevant parties, from the beginning, that it did not intend the perjury charge discussion as a threat.  The Court will not do so.  It remains that the right of a defendant to present their version of the facts does not extend to prevent a potentially compromised witness from consulting with an attorney.  [R. 75 at 4.]

Relatedly, the Court notes that Ms. Stormbringer's subjective belief that she was being threatened is not particularly probative in this context.  As set forth above, courts have looked for more objectively threatening conduct to establish improper witness coercion or interference.  *See Webb*, 409 U.S. at 97–98; *see also Serrano*, 406 F.3d at 1216.  Here, Ms. Stormbringer made her unease and apparent distaste for Government counsel clear while on the stand.  [*See* R. 83 at 56 ("Question: And you came back and said it was in fact a reimbursement check, didn't you?'; Answer: 'Because that's what you wanted to hear.'; Question: 'Oh, so you were thinking you were coerced into saying that?'; Answer: By you, yes.").  These conflicts were front and center

for the jury to consider when weighing the truth of Ms. Strombringer's statements, and rightfully so. Conflict during questioning, however, does not rise to the level of a threat unless the prosecutor's actions are "over and above what the record indicates is necessary and appropriate." *Pierce*, 62 F.3d at 832 (cleaned up). And the record reveals there was no threat here.

The Government's actions in regard to Ms. Stormbringer clearly did not cross the "fine line separating the vigorous pursuit of justice from the overzealous pursuit of victory." *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1198 (9th Cir. 2015). The Government, after consulting with the Court, simply allowed her to consult with an attorney when, objectively, the risk of perjury became apparent. The Defendant was not improperly prejudiced by this careful and considered course of action. [R. 75 at 5.] Mr. Wellman fails to establish substantial legal error occurred on this ground.

**2**

Next, Mr. Wellman argues the Government erred by improperly shifting the burden of proof by suggesting Mr. Wellman failed to produce evidence to support his case. [R. 88-1 at 8.] at 2.] Here Mr. Wellman takes issue with the following statement made by the Government in closing argument regarding witness Buddy Stone:

> But then when Wellman called him in, after he had heard what Buddy had done, he tried to correct the damage or limit the damage by asking Buddy to sign a false statement saying it was a loan. Now, we never saw that statement. They decided not to bring it out, but it is part of the conduct –

[R. 85 at 119–20.] Following this statement, defense counsel asked to approach and moved for a mistrial. *Id.* at 120. The Court took the motion under advisement at that time and allowed closing arguments to continue but not before reminding the Government that "it might be a good time for the Government to remind the jury that the defense has no burden in this case." *Id.* at 121. Upon continuing, the Government did just that. [*Id.*; R. 76 at 2.] The Court subsequently

denied the motion for mistrial [R. 76 at 3], applying the standard set forth in *United States v. Ursery* concerning a prosecutor's comment on a defendant's failure to present exculpatory evidence. 109 F.3d 1129, 1134 (6th Cir. 1997).

To determine whether comments amount to prosecutorial misconduct, the Sixth Circuit has set out a two-step inquiry: "First, we determine whether prosecutorial statements allegedly constituting misconduct were improper.  Next, if we find impropriety, we then determine whether the improprieties were flagrant such that a reversal is warranted." *United States v. Eaton*, 784 F.3d 298, 309 (6th Cir. 2015) (internal quotations and citations omitted).  To determine whether improprieties were flagrant, courts consider four factors: "1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; 2) whether the conduct or remarks were isolated or extensive; 3) whether the remarks were deliberately or accidentally made; and 4) whether the evidence against the defendant was strong." *United States v. Kuehne*, 547 F.3d 667, 688 (6th Cir. 2008) (citation omitted).

Mr. Wellman argues the statement made in closing argument was both improper and flagrant.  [R. 88-1 at 9.]  The Government disagrees, arguing that Mr. Wellman cannot even make it past the first prong—impropriety.  [R. 92 at 6.]  On review, Mr. Wellman fails to establish either prong.

Generally, a prosecutor may not comment on the failure of a defendant to testify but may comment on the failure of the defense to produce evidence. *United States v. Porter*, 701 F.2d 1158, 1164 (6th Cir. 1983).  This rule, like many, comes with caveats.  A comment on failure of the defense to produce evidence may still be improper if the statement was "either manifestly intended or was of such character that the jury would necessarily construe it as a comment on the failure of the defendant to testify." *United States v. Peck*, 62 F. App'x 561, 569 (6th Cir. 2003)

18

(internal quotations and citations omitted).  And, more broadly, a prosecutor cannot "suggest that the defendant had a burden of proof or any obligation to produce evidence to prove his innocence." *United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993), *holding modified by United States v. Lawrence*, 308 F.3d 623 (6th Cir. 2002).

In this case, the prosecutor's remark was not an indirect comment on Mr. Wellman's failure to testify, nor did it suggest Mr. Wellman had the burden of proof to prove his innocence. First, it is clear from the record that the Government did not "manifestly intend" to comment on Mr. Wellman's failure to testify and any argument to the contrary is misplaced.  Other courts have found that a prosecutor emphasizing *defense counsel's* failure to produce exculpatory or rebuttal evidence does not implicate or violate a *defendant's* failure to testify.  *See United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998).  The transcript indicates the Government stated that "they decided" not to bring out the evidence—a signed letter referenced during trial—obviously referring to the defense team, not Mr. Wellman.  [R. 85 at 119–20.]

Even assuming this comment were improper, it certainly was not a flagrant impropriety. Instead, it was an isolated comment made regarding one piece of evidence as it related to one witness, in a case where the Government introduced a substantial amount of other evidence in support of its case.  *See Kuehne*, 547 F.3d at 688–89.  In these circumstances, the comment was not likely to mislead the jury.  *United States v. Barnes*, 704 F. App'x 435, 438 (6th Cir. 2017). And, to the extent that there was any perceptible error, it was rectified when the Government immediately reminded the jury that Mr. Wellman had no burden to introduce evidence following the conference at the bench.  *United States v. Carson*, 560 F.3d 566, 576 (6th Cir. 2009). Further, the Court instructed the jury several times on the burden of proof.  [*See, e.g.*, R. 74 at 3 ("[T]he Defendant has no obligation to present any evidence at all, or to prove to you in any way

that he is innocent."). The Court presumes the jury followed these straightforward instructions. *Zafiro v. United States*, 506 U.S. 534, 540 (1993).

**3**

Lastly, Mr. Wellman contends that "[e]ven if the errors addressed in the foregoing arguments are not deemed sufficient, standing alone, to merit a new trial, cumulatively they are certainly enough." [R. 88-1 at 11.] But where, "as here, no individual ruling has been shown to be erroneous, there is no 'error' to consider, and the cumulative error doctrine does not warrant" a new trial. *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012).

**III**

While no trial is perfect, the Court is mindful of a criminal defendant's fundamental guarantee to a fair trial. *Brown v. United States*, 411 U.S. 223, 231 (1973). In this case, that guarantee was preserved. There was no substantial legal error and the evidence presented by the Government supports the verdict rendered by the jury at trial. Thus, neither a judgment of acquittal nor a new trial is warranted. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1.    Defendant Timothy Wayne Wellman's Motion for Judgment of Acquittal [**R. 66**] is **DENIED**;

2.    Defendant's Renewed Motion for Judgment of Acquittal [**R. 88**] is **DENIED**; and

3.    Defendant's Motion for New Trial [**R. 89**] is **DENIED**.

This the 21st day of July, 2020.

Gregory F. Van Tatenhove
United States District Judge